Wilberto MENDEZ, Petitioner,

v.

**DISTRICT OF COLUMBIA DEPART- MENT OF EMPLOYMENT SER- VICES, Respondent.**

**Chamberlin–Washington, Inc. and Travelers Insurance Company, Intervenors.**

No. 02–AA–604.

District of Columbia Court of Appeals.

Argued Feb. 27, 2003.
Decided March 27, 2003.

---

Kirk D. Williams for petitioner.

Amy L. Epstein for intervenors.

Arabella W. Teal, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before STEADMAN and FARRELL, Associate Judges, and PRYOR, Senior Judge.

FARRELL, Associate J.

D.C.Code § 32–1503(a–1) (2001) (formerly D.C.Code § 36–303(a–1)) declares that "[n]o employee shall receive [workers'] compensation under this chapter and at any time receive compensation under the workers' compensation law of any other state for the same injury or death." The Director of the Department of Employment Services (DOES) affirmed an order of a hearing examiner discontinuing workers' compensation benefits petitioner was receiving after the examiner found that petitioner had received compensation for the same injury under the law of Maryland. Petitioner challenges that decision by contending that principles of *res judicata* bar his employer, who did not raise the issue of double compensation at the hearing on his eligibility for benefits under District law, from invoking the statutory disqualification at a later time. We affirm.

## I.

Petitioner, a Virginia resident, was employed by Chamberlin–Washington, Inc. ("Chamberlin"), a Maryland corporation, to do work throughout the Washington, D.C. metropolitan area. On July 15, 1999, while working in the District of Columbia, petitioner fell from a scaffolding and was injured. He filed a claim for temporary total disability benefits in the District for the period beginning July 15, 1999, and continuing. At a November 1999 hearing on the claim, Chamberlin disputed it on the sole ground that petitioner's work in the District of Columbia had been "temporary and intermittent," *see* D.C.Code § 32–1503(a–3) (2001), thus disqualifying him for benefits in the District. A hearing examiner rejected this argument and, in a February 2000 order, awarded petitioner the requested benefits, which Chamberlin began paying without further challenge.

In April or May of 2000, however, Chamberlin (through its insurance carrier, Travelers) informed DOES of the fact that petitioner had applied for and received workers' compensation benefits for the same injury from the Maryland Injured Workers Insurance Fund (MIWIF), covering the period from July 15, 1999, through November 9 of that year.[1] Chamberlin

---

1. For that period, petitioner had received approximately $4,367.14 in workers' compensation payments from MIWIF, as well as pay-

moved for review and termination of the District compensation award under D.C.Code § 32–1524(a)(1) (formerly D.C.Code § 36–324(a)(1)). This statute permits DOES, "upon [its] own initiative or upon application of a party in interest," to review and modify or terminate a compensation order up to one year after receipt of the last payment, where "a change of conditions has occurred which raises issues concerning ... [t]he fact or the degree of disability or the amount of compensation payable pursuant thereto." Petitioner's receipt of compensation from Maryland for the same injury, Chamberlin argued, was a "change of conditions" that disqualified him from receiving further benefits in the District for the injury by operation of D.C.Code § 32–1503(a–1).

At a hearing on Chamberlin's application, petitioner's receipt of the Maryland benefits was essentially undisputed. The DOES hearing examiner found that the payments had been received, and agreed with Chamberlin's argument that discovery of the payments was a "change of condition" affecting the amount of compensation properly payable to petitioner. He therefore terminated petitioner's District benefits prospectively in accordance with § 32–1503(a–1). (Chamberlin had not sought recoupment of benefits already paid.) The Director agreed with the examiner's analysis, stating that, since the employer was contesting the amount of benefits properly payable to petitioner, "[t]he [examiner's] application of D.C.Code § [32–1524] to the instant case was appropriate and in accordance with the law," and that § 32–1503(a–1) compelled termination of the benefits in the District.

## II.

Petitioner does not dispute that he had received workers' compensation from MIWIF for the same injury for which he sought and received benefits in the District. Nor does he seriously dispute that after-discovered evidence that a claimant has received benefits in violation of § 32–1503(a–1) may amount to a change of conditions affecting entitlement to continued compensation under § 32–1524.[2] He argues, instead, that permitting the employer to reopen the compensation award was improper in this case because Chamberlin knew, or reasonably should have known, of the MIWIF payments at the time of the original hearing before DOES, yet failed to raise the issue there—so that one cannot reasonably speak of a "*change* of conditions" under § 32–1524. In essence petitioner relies on principles of res *judicata*, as applicable to administrative proceedings, see *Short v. District of Columbia Dep't of Employment Servs.*, 723 A.2d 845, 849 (D.C.1998), to argue that Chamberlin's lack of diligence in not raising a defense it could have raised at the appropriate time bars it from doing so now. *See id.* (Res *judicata* bars relitigation of "not only those matters actually litigated but also those which might have been litigated in the first proceeding," though it "does not apply ... where the basis for a second claim could not have been discovered with due diligence" (citation and internal quotation marks omitted)).

▮▮▮ We need not join the parties' dispute over whether, by conducting reasonable inquiry, Chamberlin could have learned of petitioner's MIWIF payments in time to raise them at the November 1999 hearing.[3] The fact is that Chamber-

ment of medical expenses totalling some $5,666.28.

**2.** In his brief appellant strains to suggest that a "change of conditions" as intended by the statute covers only a change in the claimant's physical or mental condition, but the text of

§ 32–1524(a)(1)—"*or* the amount of compensation payable pursuant thereto" (emphasis added)—refutes this suggestion.

**3.** Chamberlin contends, although the hearing examiner made no findings on the issue, that petitioner's counsel had told Travelers that

lin brought the payments to DOES's attention approximately two months after the February 2000 compensation order, and the hearing examiner, having confirmed their existence, determined them to be a materially changed condition affecting the legality of the compensation award in the District. In these circumstances, petitioner's reliance on *res judicata* is unavailing, because, as this court has held, D.C.Code § 32–1524(a) creates an *"exception* to the doctrine of *res judicata,"* *Walden v. District of Columbia Dep't of Employment Servs.,* 759 A.2d 186, 190 (D.C.2000) (emphasis added), in that it "specifically provides for the review of issues previously decided in compensation orders and, when appropriate, for the modification of such orders." *Id.* at 191; *see Short,* 723 A.2d at 850. And modification is "appropriate" whenever "manifest error" or "manifest injustice" has attended the original finding of entitlement to benefits or determination of the amount. *Id.* at 190 (quoting *Oubre v. District of Columbia Dep't of Employment Servs.,* 630 A.2d 699, 703 (D.C.1993)).

In light of § 32–1503(a–1), petitioner's disqualification for benefits in the District of Columbia should have been "manifest" at the November 1999 hearing, given his receipt of payments from MIWIF for the same injury.[4] That the disqualifying condition was not made known at the hearing was partly, but only partly, Chamberlin's fault (assuming *arguendo* its lack of due diligence): petitioner, represented by counsel and thus presumptively aware of the statutory bar against double compen-

sation, also did nothing to call to the examiner's attention this manifest ground for disqualification. *See Oubre,* 630 A.2d at 703 (noting mutual mistake of fact as a basis for refusing to apply *res judicata* ).[5] In his written opinion, the Director twice referred to the disqualification effected by § 32–1503(a–1) as "jurisdictional." Whatever precisely he meant by that description, the Director has previously recognized the significance that the bar against receiving compensation for an injury from more than one jurisdiction has in the overall workers' compensation scheme. Thus, in *Springer, supra* note 4, we upheld the Director's application of the prohibition to deny employees compensation when they had accepted benefits from employers in Maryland and New Jersey for the same injury, but without knowing that this affected their eligibility for compensation in the District. We sustained as reasonable the Director's conclusion that 1991 changes in the statutory language of § 32–1503(a–1)'s predecessor eliminated any requirement of notice (or of a knowing and voluntary waiver of rights) before receipt of payments elsewhere bars compensation here—changes that effectuated the legislature's intent to "decrease the costs of doing business in the District by extending and broadening the bar against the injured worker recovering benefits in more than one jurisdiction for the same injury." *Springer, supra* note 4, 743 A.2d at 1222 (emphasis added) (quoting Director's decision).

---

petitioner had received no other payments for the July 1999 injury. Petitioner disputes having made such representations, and argues that as a Maryland employer providing coverage through MIWIF, Chamberlin was in a position to know whether petitioner had sought benefits through the Maryland carrier.

**4.** As we had occasion to emphasize in *Springer v. District of Columbia Dep't of Employment Servs.,* 743 A.2d 1213, 1220–22 (D.C.1999),

§ 32–1503(a–1) bars compensation in the District if benefits have been received "at any time" for the same injury under another state's law.

**5.** Given the mutual responsibility of the parties for the error in the original compensation award, nothing of consequence here turns on whether, strictly speaking, an *Oubre* exception from *res judicata* is conceptually distinct from the "change of conditions" of § 32–1524.

It has been stated that *res judicata* does not prevent revisiting the same or a related claim in an administrative forum "if the scheme of remedies" so counsels or "if according preclusive effect to determination of the issue would be incompatible with a legislative policy...." RESTATEMENT (SECOND) OF JUDGMENTS § 83, at 267 (1982); *see also* II KENNETH CULP DAVIS AND RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 13.3, at 250 (3d ed.1994).[6] The Director's conclusion that the payment of benefits to petitioner in the District was unauthorized in light of § 32–1503(a–1) and that § 32–1524(a) permitted the examiner to correct that error and terminate the payments is a reasonable application of the governing law, which we have no basis to disturb. *See Springer, supra* note 4, 743 A.2d at 1219. Our decision, it hardly needs stating, is without prejudice to petitioner's pursuit of any additional compensation to which he may be entitled under Maryland law.

*Affirmed.*

---

6. *See also Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) ("rules of preclusion" apply in administrative proceedings "except 'when a statutory purpose to the contrary is evident' " (citation omitted)).